The next case on the call is case number 123025, Gonzales v. Union Health Service, Agenda No. 18, Counselor's Division. You may proceed. Karen DeGrande for Defendant Appellant, Union Health Service. Chief Justice Carmeier, Justices, good morning. May it please the Court, Counsel. In our briefs, we've articulated in detail the problems with the trial court's analysis that call for this Court to vacate the memorandum opinion in order and to reverse the trial court's finding that the 1988 amendment of section 26, the immunity provision is unconstitutional. The overarching flaw, we argue, is the trial court's very lengthy, in the trial court's lengthy analysis, is that it apparently shifts the burden to Union Health. The trial court looked to Union Health to prove the wisdom of the legislature's decision to grandfather immunity for Union Health, immunity that, contrary to the opinion below, extends to Union Health and other old-time, pre-1965 health services plans. With that backdrop, we ask the Court to consider unrebutted evidence and the case law explaining the statutory creature that is the subject of this case, a voluntary health services plan, and addressing Union Health's status in particular. Counsel, before you get to that, would you address the issue of jurisdiction? Here we have a denial of a motion to dismiss, not a final judgment, holding a statute unconstitutional. Normally we wouldn't have jurisdiction if it's not a final judgment, even on a constitutional issue. Is that not correct? It's an exercise of the Court's jurisdiction that the Court has done before, despite the lack of finality to this order. And so the Court does have jurisdiction to address this and allow a direct appeal in the absence of a final order. And we cite the Dessink case in our jurisdictional section, I believe the plaintiff also cited that case. The Billiff v. CTA case, which is cited in the briefs, has a very similar situation where there's an immunity provision that was declared unconstitutional and a motion to dismiss denied. So, yes, it doesn't come within the auspices of Rule 302A, Your Honor, but we would submit an appropriate occasion for the Court to exercise this authority where the trial court declared a statute unconstitutional, especially in this kind of situation where if upheld, union health would be excused from the lawsuit entirely. There's a benefit not just to union health in that regard, but also to the plaintiff for proceeding with the litigation and of broader interest of stability for the statutory framework. So that's the position that we've taken on that. Okay. And that leads me to another question when you say that it would leave union health out completely. This was a motion to dismiss on the basis of immunity. If the amendment is unconstitutional, don't we go back to the statute as it was in effect before the amendment was made, which gives union health immunity as well as the other entities? That's an issue that we've briefly raised. That was an issue that was raised in the trial court and not addressed by the trial judge. In this very lengthy opinion that the Court's addressing, quite frankly, it's a little bit difficult to assess what the trial court's statute was unconstitutional on its face as well as applied to union health. And the plaintiff also has argued in this court without restricting its analysis to the amended version of the statute, that the statute is unconstitutional as applied to union health. So yes, we've raised the issue, but with the asterisk that the Court may address or may interpret the trial court's decision as an as applied declaration of unconstitutionality as to union health even under the older version of the statute, although the trial court concluded in announcing its ruling it only addressed the amended version of the statute. So we agree that if we go back and if this is stricken, that there's certainly a potential interpretation. But I'm trying to address the entirety of the trial court's order. So that's why we've presented our arguments in this way. Which leads me to one more question. Certainly, Your Honor. I'm not sure that the trial court's order complied with our Rule 18, setting out the things we asked them to set out. But the judge does make reference to the U.S. Constitution Article 4, Section 1, which is full faith and credit. How does that have anything to do with this case? I looked at that too, Your Honor. And my assumption was that the Court's reference was to incorporate equal protection. So that's what my reading of it was. And there's no other analysis of that issue that's contained in the trial court's memorandum of order and opinion. Thank you. So these entities, just to give it a small amount of background, these entities came about in the 1950s as a result of Union Health and Welfare Fund's goals to improve the benefits, the health care benefits and other benefits, but this particular legislation, the health care benefits provided to union members. In that context, health and welfare funds would serve as a centralized entity to carry out the administration of benefits required by a collective bargaining agreement. And I think that thought is particularly true in instances not where there is a large company that's the employer, but many smaller employers whose employees are members of a union, such as the union that's involved in obtaining health care from Union Health, and that's the Service Employees International Union. The health, and then going back to that time frame of the original legislation, the health and welfare funds wanted to do better than to simply indemnify their union members for access to health care for union members and their families, access to good quality health care at an affordable price. So the idea was not just to merely provide union members with health care insurance, but to deliver the care. And the General Assembly was willing to help, but it drew some very specific boundaries for regulation of the entities within this classification. The entities, the idea, the concept was for the entities to serve both as a health care provider, which I try to envision as the doctor's office, if you will, and also act as an insurer, which covers the cost and undertakes the risk for preserving care at union health facilities, and also additional health services not delivered on site. Union Health obtained its charter in 1952 to address this need, and as the Executive Director, Mr. Joe Garrett, explained in his unrebutted affidavit, Union Health continues to serve unions by working with health and welfare funds of several locals of the Service Employees International Union, and those entities continue to provide for their needs of their union membership through the health care delivery model facilitated by the Voluntary Act for both to provide medical care and to wear the hat of an insurer. Can an HMO provide this unique combination? No, primarily, as Mr. Garrett attests, because HMOs are required to provide comprehensive health care packages. Voluntary plans are not statutorily required to do so. So Union Health, under its VSPA authority, can craft more narrow benefit packages to meet the needs of the union as the health and welfare fund sees fit. So one example might be that a particular local, for example, would want to obtain physician services through Union Health, but perhaps they want to obtain hospital services, inpatient services, through some other arrangement, and that's what this facilitates. As to the class of one issue, should we be troubled by the fact that the legislature has now made it impossible for any other entity to qualify or join that class? Well, first, I would reframe that as it's not a class of one, your honor, because there are two other voluntary plans still in operation, and that's been an error that's been recited by plaintiffs in the briefing here and in the briefing in the trial court. But should the court be troubled by that? I submit no. The legislature has truly done its job in this case. It looks at, you know, who is providing these services, who is providing them within the auspices of the voluntary plan model, and who isn't. And who isn't, according to the legislature in 1988, was Anker and Michael Reeves. So I think it's, I don't, the fact that the, I think what the court should draw from the 1989 legislation that ended the voluntary plan new charters should be that the court looked at it and said, all right, I don't, we don't, or not the court, the legislature, we don't see the need necessarily, but we see these entities, these three entities are still serving that role, and they're still serving the important government purpose that was recognized in the 1950s. A permanent class of one or a few members, depending on the facts here, that's different though than a generally applicable provision, isn't it, that only happens to cover one or a few entities at a particular point in time? Does that raise any special legislation concerns? I don't think there's a special legislation issue here, Your Honor, because I don't regard Anker and Michael Reeves, the two entities that were targeted by the 1988 legislation, as necessarily similarly situated to Union Health. I mean, there's, the trial court, I feel, had a far undue emphasis, a much greater undue emphasis on the fact that Union Health also has a certification to exercise HMO business, but that's a far cry from saying that Union Health operates its business, or operated then or operates it now, in the same model as the two entities that the legislature said, wait a second, they're not, they're not providing the need that we envisioned for this legislation, so they're not going to get immunity anymore. They're not going to, through this business plan where they sort of stepped away from the union, from providing their union members with health care, and went out of the marketplace once they had the same, or once they had not only an Illinois HMO certificate, but also were qualified as federal HMOs, which Union Health is not, and extensively advertised, advertised themselves to employers, and again, we're not filling that niche role that Union Health fills. So this, we'll hear from the plaintiff, but this case then most likely, as far as you're concerned, would be decided on the rational basis for treating VHSPs. Their position, right, is that United Health, let me get this right here, how they're operating today, right, versus how they were operating in the past, whether they still qualify. That's one of the arguments that the plaintiff is making. Well, how they were operating in 1988, I think, is really the focus, and that there's, and the way this came about in the trial court was there's these, I think it's about six cases where the first district considered the question of initially this constitutionality of whether the amended version of the immunity provision would retroactively apply, whether that was constitutional. In one of those cases, and there was two cases where there was extensive discussion about anchor, that entity, and in one of the cases, and it's the only case where there was a finding of unconstitutionality, the American National case, the court said, you're not functioning in the, under the General Assembly's notion of a health services plan. So this immunity provision is unconstitutional as to you. From there, it seems that we went far afield and that page after page of the appellate court, not appellate court, the trial court's analysis and also the true of anchor, and that's true of any entity who has a certificate, an HMO certificate, and that's just not the case. The question, and the legislature certainly could have, when it amended the immunity provision, it certainly could have said, well, we don't want anybody who even has an HMO certificate to be able to have immunity, but the legislature didn't say that. The legislature looked at how this entity operated, and so I think that the focus strayed from looking at how does this entity operate. Primarily, union health operates in this role serving union members as a voluntary plan. It has a very limited HMO component of its business, and so to compare and to say, since this was true of anchor, this is true of any other entity that has an HMO certificate is really speculation that has no basis in any facts. Nothing in the record, certainly. This is one of my questions, is how much of this is in the record? How do we know how one entity functioned in 1951, how they functioned in 1988? How developed of a record is this? Well, Your Honor, I agree that there could be more information in the record. I certainly don't believe that it was union health's affidavit to give the overview. It's unrebutted. There was nothing to rebut that affidavit, but the fact is that the plaintiff did not carry the burden of proving it. We're supposed to start with the presumption of constitutionality. We're supposed to start with deference to the legislature's determination here, and to base the determination that union health was not operating within the auspices of the statute as a service health plans corporation is pure speculation. The only thing that's cited is that was true of anchor, so I guess that must be true of union health, since you both have HMO certificates. And it's just, they didn't carry their burden, and so therefore, I think in this court, the constitutionality of the statute can't be questioned. Not on this record. So, it seems to me that it's also quite significant that the plaintiff, as well as the trial court, acknowledge that there is a rational link between the social goal of providing Illinois' union citizens with ready access to affordable health care, and conferring on health services plan corporations, non-profit entities, the economic boost of immunity from civil liability. But the starting point for the trial court and for the plaintiff to question this link is purely the general assembly's reaction to the conduct of these two other entities. So, the way that the issue is framed by the plaintiff, I think, is incorrect. The plaintiff looks at the 1988 amendment and says that immunity was conferred on union health. Immunity was removed for two entities that the legislature thought no longer deserved immunity within this scheme, within this legislative scheme. Mr. Grand, just to be clear, which two entities are you referring to? Anchor and Michael Reeves. In your brief, you talked about Sidney Hillman and union medical. Union medical is different than union health, right? It's a different entity, Your Honor. So, after the 1988 amendment, what happened to them? Their status? Their statuses, they are voluntary plans. There's, I think, a misunderstanding by the trial court. The same voluntary status as your organization? That's correct, Your Honor. And there was a misunderstanding that's been repeated by the plaintiff in this court, that there are no other entities that followed this. The trial court recognized that those two voluntary plans were in existence, but had the misunderstanding that somehow their immunity was removed, leaving union health as a class of one. And I can't think of any reason why the trial court would make that assumption, but I think it's an erroneous assumption. But is it in the record? That the trial court said that? No, I mean, is it in the record, is the status of the three? The status, it is, Your Honor. It's in the record by way of Mr. Gerrit's affidavit. There's a reference to the Illinois Department of Insurance website, which lists all three. And also, it's referred to in one of the decisions of the appellate court, their status. And I think, and also, and perhaps this was the basis of the legislative debate in the record, when the legislator talked about this issue, it talked about the three entities, Anchor, Michael Reese, and Union Health. But it spoke of those entities in the context of they were voluntary plans that also had an HMO certificate. Sidney, Hillman, and Union Medical did not. And perhaps that was sort of the basis to recognize the sound decision of the legislature and to reverse this decision of the trial court. Thank you. Thank you. My name is Nicholas Louisi, and I'm appearing on behalf of the plaintiff's athlete in this case. May it please the court, counsels. Mr. Louisi, I'm going to ask you the same question I asked Mr. Grant. I thought you might. If we hold, if we agree with you that the statute is unconstitutional under our jurisprudence, the effect of declaring a statute unconstitutional, we revert back to the statute as it existed prior, which grants immunity to Union Health and other voluntary organizations. Isn't that true? True. However, I think the difference is that we're also saying that there is no longer a rational basis to have these immunities for these health service plans. You didn't challenge the underlying statute. We challenged, well, we challenged... You challenged the amendment, didn't you? But if it, in so doing, I believe we're saying at this point, back then our brief talks about the fact that there was a rational basis when this statute was enacted. No question about that. As you saw in our brief, there are contract provisions where the doctors are reimbursed by the hospital's advocate in this situation. There's a lot of overlap, and it's difficult, as one of the cases pointed out, to say where does it end. And that's one of the reasons why I believe it was the American National case where it said that ACRE was no longer functioning as a health service plan. They said that ACRE, 95% of its premiums were from outside their core employees and groups. So that's what they discovered. And I believe that's what's going on in this case as well. It's very difficult to ascertain in this day and age exactly where the lines are. So I believe that if it was found unconstitutional, the 1988 amendment, that it would refer back to the original statute, which I also believe at this point would probably be moved because of the fact that there is no rational basis for having it any longer. So you're saying a constitutional statute can become unconstitutional later? I believe by effect of this statute. If the court finds this unconstitutional, I believe that it can. So we could use this statute to find the original statute unconstitutional? Is that what you're saying? No. What I'm saying is that if this statute is found unconstitutional for any reason, I believe that it would revert back at some point to where Your Honor mentioned that the immunity would then again be intact. But then we address the issue of whether or not the immunity still applies at least to union health, and we don't believe that it would. So I believe that with respect to union health, that statute would no longer be valid. So in looking at the Chief Justice's question and your response to both him and Justice Garmon, is the only issue that this court is left with is whether union health was operating as a traditional DHSP? I think the issue is whether or not they're entitled to immunity. Well, they would have to be, right? I mean, you would probably agree that if – you're saying they weren't a traditional DHSP, right? And that's why they're not entitled to immunity. Right. And also they're not entitled to immunity because of the special legislation that we believe was enacted in 1988. And the reason why it's special – and I know counsel brought up the fact that it didn't give them immunity, that it actually took away immunity for Anker and Michael Reese. But in effect, it did grant them immunity because it put in a hard cutoff date of 1965, any plans in effect prior to 1965, which is what union health was. Then on top of it, you have the 1989 enactment that says there are no more union service plans, which in effect leaves exactly one entity that's granted immunity. Not two others? Not three? Your colleague is not correct when she says there are two others? I don't believe that there are two others, Your Honor. If you look at the McMichael court, it even talked about it. What about the record here? I mean, another argument that's made is that you're the one that's challenging the statute, and so the burden is on you to develop a record. And so at one point you were saying that they were no longer – this entity was no longer functioning as a voluntary plan. Did you show that? Did you present evidence to show that? We believe we did. As indicated in our brief, you'll see that we mentioned the fact that union health receives funds from advocates, which reimburses them for 60 percent of total charges when expenses reach a certain amount. That's not a union service function. That's more of a nature law function. So the issue of whether this was an HMO or a voluntary plan was supported by evidence that you presented, and that's how the factual issues were determined by the court. Is that right? That's correct. Can you tell us about the other two entities that counsel says exist in the same structure as this union? In all honesty, Your Honor, I don't believe that they do exist in exactly the same structure as this one. This was addressed in the McMichael court, and it talked about how the special legislation – they were concerned about special legislation with the 1988 enactment, and they stated that there are three companies at this point that will be affected by this – Anchor, Michael Reese, and Union Service. If we take immunity away from the other two that leaves one, isn't that special legislation? That tells me that there were no other corporations that were similarly situated to Union Health. So I don't believe that there are two other entities that are – Well, counsel, to be clear, Sidney Hellman and Union Memorial, what about those two? I think that's the one that – That's what you're talking about? Correct. And then Mr. Grand made reference to – and you can clarify this if my question is wrong on the rebuttal – but the reference is in the record that cite these two as being the same category. I don't believe that's correct. You don't believe it's in the record? I think what's in the record is that Union Health is definitely a service plan with an HMO component. I'm not sure about Hellman and the other entity because they were not discussed, especially in the McMichael case, because at that time there were only two. I'm not aware of any that are – And Union Memorial is the other one. Correct. Because your brief didn't really address that. It was not raised on appeal, and that's probably – Well, it's argued in Mr. Grand's brief. I don't believe that it was, but if I'm incorrect, I'm sure it's in the record. Ms. Mark? You've asserted an equal protection clause violation. Typically with that, for someone to have standing, they would be the individuals who were being discriminated against, and that would be the other two organizations that you acknowledge are still there. They're not raising the issue. Do you have standing to raise this issue as a special legislation or equal protection issue? I do believe we have standing because we represent one of the people that's being affected by this very statute. The defendant in this case is claiming immunity based on the statute that we believe is ineffective, and that affects my client directly by the very fact that if immunity is granted, they would be out of the case. They wouldn't be here anymore. So I believe if my client does have standing, we do have standing challenges. But as far as the – and I want to bring up the McMichael case one more time because I wanted to read specifically what the court stated in there. They said no HMO may be granted immunity except union held because the legislature felt it still conformed to the original concept of the VHSPA. However, the problem lies in the reservation of immunity for a single entity, and if the 1998 amendment is constitutionally invalid at all, it is because of the exception it creates. And this was the McMichael case once again, which talked about the fact that this was the only entity that was going to be affected by this legislation. We also raised several other issues, and I believe I've covered them, but there was also the issue that the union health service purchased insurance, which we believe was further evidence that it was not acting as a VHSP at the time. And that argument would go to the unconstitutionality of the original statute? No, that's to the amendment, to the amendment, Your Honor, the 1988 amendment. I hope I'm being clear. The issue, I believe, is the 1988 amendment, which took away immunity for two health care services companies. And then the 1989 amendment that basically said no other voluntary health service companies can form. So that leaves really immunity for just one, no one else, no one else. So with that in mind, if you have any further questions, I'd be happy to address them. You make the facial and an as-applied challenge. This is following up somewhat, I think, on Justice Heise's question. Does the record support that there was a hearing developing evidence as to the as-applied aspect of the challenge? And the as-applied goes to what? To the change in the operation of union health as opposed to what it was when the statute was developed? There was no such hearing. However, there was some documentary evidence that was brought before the court of contracts with Advocate Health, which demonstrated the nature of the relationship. Seeing no other questions. Thank you. Reply. Thank you, Your Honor. And just to go back to this one versus three issue, it can get a little confusing, and perhaps one reason is union health service, union medical is the name of the other entity. But there's no basis for disputing that it exists. And also Sidney Hillman. There's no basis for disputing that these are entities that are identified by the Department of Insurance as having voluntary health charters. And Mr. Garrett, who is not only the executive director of union health, but is also very familiar with the operations of the insurance industry, also stated in his affidavit, which is unrebutted. So I don't quite understand the basis for the confusion. As far as the citation to the McMichael decision, the McMichael decision actually acknowledges the existence of those two VISPAs. And that's at page 117 of the decision, 259.0F3 at 117. See, for example, union health service, that's us, and Sidney Hillman Health Center. So that's acknowledged there. And then there's a footnote, first footnote in that McMichael decision. And McMichael was a Rule 308 appeal where Michael Reese challenged the constitutionality of the 1988 amendment and said the amendment is not constitutional, and therefore, Michael Reese, we should go back to the original version of the immunity provision, and Michael Reese should still have immunity. And ultimately the court determined that it had improvidently granted review over that appeal. But there were two important things for purpose of the discussion here that I think should be noted by the court. Besides the fact that the court specifically recognized the existence of Sidney Hillman, at least at that time, that's a 1994 decision, but in footnote one of that decision, the court said there are three entities that are VISPAs and also have an HMO certificate. So that's the three part of it. Sidney Hillman and Union Medical don't have HMO certificates. So that's perhaps the basis of the confusion. I honestly can't explain why the trial court concluded that the amendment of the immunity provision, Section 26, stripped Sidney Hillman and Union Medical of their immunity. And the court says that in its opinion, but there's no basis for that conclusion that I can discern. So that's McMichael. And the other important thing, the second important thing about the McMichael decision, is that it did discuss Union Health. And it did discuss Union Health as the one entity in the category of having a voluntary health certificate and also, I mean voluntary health charter and also an HMO certificate. It does not have a federal HMO certificate. But it was the one that was left and it asked some questions. But it said we don't have the record here. We don't have the record to discern whether it is continuing to operate, and this goes to Justice Tice's question, is it continuing to operate as a plan within the notion of the legislature. Now interestingly, and I don't want to get into trouble by citing the Rule 23 decision here, but I did cite it with the usual mea culpas in my brief because the plaintiff said in the trial court and in this court, the appellate court has never looked at this issue, has not gone back and looked at this issue. And yes it did in the Wadikar decision where the First District said not only did it look at the issue of the constitutionality of the 1988 amendment, it looked at it as to Union Health. And it looked at the McMichael decision and said they said they didn't have the record. We've got the record. And Justice Gallagher writing for the court said this is perfectly fine. This is constitutional. So it's a Rule 23 decision. I cited it in the trial court. I cited it in this court. I didn't try to assert in any way, form, or fashion that it was binding on the trial court. But I thought it was important for the trial court to know that. There is no basis for reaching the conclusion on this record that Union Health doesn't continue to act in the form and function of a voluntary health care plan. And there is a purpose. Opposing counsel mentioned the fact that Union Health purchases insurance. And the Brown decision says the voluntary health service plan is distinguishable from other health care providers because they serve the unique function of both insurer and health care provider. Is there any incongruency there? I don't think so, Your Honor. The purchase of insurance that counsel is referring to is liability insurance, professional liability insurance. And there is professional liability insurance, and this is supported by the record, is something that Union Health purchased under the collective bargaining agreement that it has with the doctors it employs. And that's one of the things that the doctors bargained for was to get Union Health to purchase that insurance. And Union Health is also named insured. But that doesn't mean, there's no waiver based on that. This is statutory immunity. The trial court drew a conclusion from the purchase of that insurance that it must mean that Union Health thinks it has liability. Well, I'm no underwriter, but I can guarantee that, well, for one thing, that's one of the reasons that perhaps it does need it is to have to address situations like this particular situation. But I believe that if the immunity provision was gone, there would certainly be a dramatic change in what that would cost. And then, again, you go to the bottom line of the economics of an entity that the legislature thought should be free of that burden. And it would certainly affect it. As far as this business of a 60% charge, there's nothing in the record that says that. There are two contracts in the record. There's the collective bargaining agreement with the doctors, and there's an agreement with Illinois Masonic. And it's perfectly fine for Union Health to have contracts with hospitals to obtain economically, and that's the name of the game here for serving the subscribers who have this insurance, that in the event that the health care or the health and welfare fund wants to obtain that coverage through Union Health, they can do it in an economical way of providing that high-quality health care. And there's nothing in the act that precludes that the act specifically says that Union Health or any other voluntary plan can enter into those kinds of contracts. So I don't think there's anything to draw, any negative to draw there. And, you know, to come back to the ultimate issue, which is does the record establish, does the record support the notion that Union Health is working as a traditional plan? Yes, there is evidence in the record, and that's Mr. Joe Gehr's affidavit. Thank you very much, Your Honors. We ask for the relief that we've asked for in our brief, which is that the memorandum of opinion in order to be vacated and that the court determine that Union Health continues to receive the immunity under the amended version of the act or if the court reverts to the prior version of the act under that version of the immunity provision. Thank you very much. Thank you. Case number 123025, Gonzalez v. Union Health, will be taken under advisement as agenda number 18. Mr. Grand, Mr. Louisi, we thank you for your arguments today. You are excused.